Good morning, Your Honors, and may it please the Court. My name is Kathleen Shen, and I represent the appellate, Mr. Brian Wiggins. Mr. Wiggins' sentence should be vacated because his 2008 conviction for Oregon second-degree assault is not a crime of violence because it could be based on merely negligent conduct as an accomplice. The District Court's conclusion that the offense was divisible between principal and accomplice liability was wrong. The District Court relied on the 2013 Oregon Supreme Court decision State v. Phillips to conclude that the two are divisible offenses, but that wasn't the law when Mr. Wiggins was convicted in 2008. Before that decision, the Oregon Court of Appeals had clearly rejected the argument that juror unanimity was required as between principal and accomplice liability, which is, I think, actually the majority rule. But even if principal liability were divisible from accomplice liability, the Shepard documents in this case do not reveal whether Mr. Wiggins was convicted of second-degree assault as a principal or an accomplice. Under Oregon law, accomplice liability does not have to be separately pleaded, and you can be charged as a principal and convicted as an accomplice. So the mere fact that the indictment, verdict, and judgment form don't refer to accomplice liability doesn't tell us that he was convicted as a principal. He could have been convicted as an accomplice without that being stated in any of those documents. And while the jury instructions could theoretically reveal whether he was convicted as a principal or an accomplice, they're just not in the record, and so the government can't rely on those to meet its burden of proof. And that's a problem because in 2008, in Oregon, you could be convicted as an accomplice so long as the substantive offense that you were convicted of was the natural and probable consequence of your conduct in another offense. That is, if you were negligent with respect to that assault. So that principle derives from Oregon case law. You know, it's clearly stated in the Gibson case, but it's also restated even after the codification of accomplice liability in 1971 in State v. Fitzgerald. And this specific instruction was actually affirmed on plain error in Chapman in 2006, which is just two years before Mr. Wiggins' conviction was sustained. And it was reflected in the pattern jury instructions that were in place at the time of Mr. Wiggins' conviction, which this court, of course, may consider when interpreting state law. And so based on the law Let me interrupt you. If the pattern jury instruction was not an accurate statement of Oregon law at the time, do we need to follow the pattern jury instruction or what the law actually was? Your Honor, I think that's a tough question, but I think in this case, given I'm taking into account the state court decision that existed at the time and the pattern jury instruction, when you look at this categorical approach question, which is what does this conviction stand for, what is the least culpable conduct that could result in this conviction, I think you have to take into account the pattern jury instruction and you have to take into account the state law as it existed at the time and come to the conclusion that this conviction for Oregon second degree assault could, in fact, be based on the unmerely negligent conduct, on the fact that this assault was merely foreseeable, which we know is not enough to satisfy the categorical approach that was in place at the time. But the Oregon Supreme Court has now made it very clear that you don't have to charge individually whether someone is the principal or the accomplice because they're not separate offenses, correct? Yes. And in fact, the Oregon Court of Appeals has found that it's a valid ineffective assistance in counsel claim if someone didn't challenge this very jury instruction. Would you agree with that? Your Honor, there's Oregon Court of Appeals decisions going both ways on that question, whether or not it was ineffective. And there's also Oregon, I believe, this isn't cited in the cases, but in my briefs, but in Lizarraga-Regalado v. Primo, they deny summary judgment on the question of whether it would have been ineffective to fail to object to this instruction at around the time Mr. Wiggins was convicted. So there is this, there's confusion as to what the state of the law should have been, especially if you apply this retroactivity principle that we generally do apply. But I think if you just look at these cases, first, Hale v. Bullock, which is cited in the briefs, says it was not ineffective not to challenge this conviction. And then, you know, if you look at what actually Oregon courts were doing at the time in around 2006, Chapman affirms on plain error a conviction using, a conviction for second-degree assault in which this instruction was given, which is another indication that this instruction was commonly in use. And I just think the fact that there are so many ineffective assistance counsel or post-conviction claims from this time period in which this instruction was given, the natural and probable consequences instruction was given and was not objected to, and particularly including assault cases, shows that there certainly is a realistic probability or that this conviction was, in fact, based on a finding of negligence or could have been based on a finding of negligence. Do you agree with Judge Aiken that we don't even need to look at the actual cases because we can just presume that the law stated in the inaccurate instruction was applied in some cases? I don't agree that we don't look at the cases, but when I look at the cases that were in place in those times, I actually think they're helpful. So the government relies heavily on this 2004 Oregon Court of Appeals decision, ANLOF, where they found there was not sufficient evidence to support accomplice liability in an assault case. But, you know, importantly, ANLOF doesn't address the, it's not about the instruction, it's a sufficiency claim. The claim that the Court of Appeals rejects in that case is that any conduct by a co-conspirator is automatically sufficient for accomplice liability, which is not the claim we're making here. And I think it's really important that in ANLOF, when they're finding there's insufficient evidence, part of their reasoning is that there's no evidence that the defendant knew or should have known that his accomplice was going to possess a knife, which is the conviction at issue there, right? So clearly, even in ANLOF, they are applying a foreseeability standard to determining whether there's sufficient evidence to hold him liable as an accomplice. And that's fully consistent with the natural and probable consequences instruction. I think ANLOF is actually, supports that instruction in a large degree. And, you know, just whatever the Oregon Supreme Court has said more recently about what Oregon practitioners should have been doing in the 2000s, in fact, this instruction was being given, and people were being convicted on this theory, and it wasn't rare, and it happened quite a bit. You know, I'd also just like to touch— If it happened erroneously, the Supreme Court has actually said that it was settled well in advance, including before this trial, that that instruction was erroneous. Does that matter if the jury was improperly instructed? So what I'm asking you is, if we can look at the Oregon Supreme Court case and determine that this instruction was not a correct statement of the law when it was given, how does that factor in to our analysis here? Your Honor, I understand that the Oregon Supreme Court says that the instruction was wrong and would have been wrong in 2008, and I understand your question. But I think when you look at the purpose of the categorical approach, which is to answer the question of what conduct does this conviction stand for, then I think that has to take into account a real look at what the law said at the time, not applying the legal fictions about retroactivity or what would have been obvious, or, you know, taking as gospel what judges might say on post-conviction review when they're trying to determine whether this person should get a new trial or not. At the time, in 2006, it was not plainly erroneous to give this instruction. This instruction and this law, this legal principle that accomplice liability could be based on the natural and probable consequences of your conduct in another offense had been, it was part of the patent instruction, but it had been reaffirmed by the Oregon Supreme Court, both before and after the codification of the Model Penal Code. And like I said, I think ANLOF is fully consistent with the negligence standard. So I don't, you know, I take it that the Oregon Supreme Court now says something different, but if you read the case, they're looking for evidence of foreseeability, and that is consistent with the instruction, and that is consistent with the fact that it was not considered erroneous to give this instruction. And in 2008, the real answer to the question of what were the elements of second-degree assault and could someone be convicted of second-degree assault based on mere negligence, I think the answer to that question is yes, and that renders the offense overbroad. But what do we do about the fact that the Oregon Supreme Court, and we're supposed to follow the highest state court, says that at the time of this instruction, it was wrong, and that everyone should know it was wrong? Your Honor, I think what this Court should do is look to the categorical approach versus the principle of Federal law, which answers the question of how we determine a historical conviction satisfies a Federal definition. And we can't look at the facts of the case because that would put judges in the positions of the jury. So the question we ask instead is what are the facts the jury necessarily would to have found? And the Supreme Court's clear that you look to the law at the time of the offense. We ask what is the least offensive conduct that could violate the law in that state at the time. And according to the Oregon Supreme Court, you couldn't violate it negligently by being an accomplice, and everyone should have known it. Now, you may be right that that's not fair, that everyone should not have known it. But that's kind of what the work in the Supreme Court has said, hasn't it? Your Honor, I think that's a legal fiction that we apply when we ask what the law always was. But the Supreme Court's been clear that when we're applying the categorical approach, we look at the law in place at the time. And I think if you look at the motivations and the reasoning behind the categorical approach, which is, again, to look at the conviction and to ask the question, what is the least culpable conduct this conviction could be for, given what the jury necessarily would have found? The answer to that question is that it could be based on negligence. And again, I would point to this Court. I think Anlauf, Chapman, Fitzgerald, the pattern jury instruction all support the conclusion that there is a realistic probability that this jury instruction would have been given and this legal principle would have supported a conviction for Oregon second-degree assault based on mere negligence. And I would point to the Court's effect in Capleton. The Massachusetts Supreme Court does look to the laws that exist at the time, notwithstanding subsequent legal developments. And again, I think, you know, if you look at the Supreme Court's reasoning in Mathis, and they talk about, you know, why we don't just take allegations in the indictment as gospel but really do this kind of rigid question, they say, look, the defendant may not have challenged that language in the indictment because there would have been no reason to. And I think that same reasoning applies here. This was a pattern instruction that had been repeatedly reaffirmed, including just two years before Mr. Wiggins was convicted in 2008. And the Chapman case isn't cited in my briefs, but the citation is 149, Pacific 3rd, 284. It's very much a realistic probability that this is a conviction that rests on negligence, and it would have rested on negligence in 2008, and that renders it overbroad under the categorical approach. Counsel, let me switch gear, and if you need a little time, we'll give it, because we have a lot of questions on this. But just the district court didn't get into a robbery set. I'll let the Tenth Circuit run that to ground if they think it needs run to ground. It needs run to ground with me, the robbery. Okay. And that is to say that he's convicted of first-degree robbery, and to be convicted of that he has to violate third-degree robbery, Oregon Statute 164.395. And one of the elements of third-degree robbery is the person uses or threatens the immediate use of physical force upon another, which seems like a dead match for the elements. And so why is it not just an easy case that the first-degree robbery counts? Your Honor, I would point this court to the Ninth Circuit's decision in Shelby. I don't have this at the top of my head because I was really focused on the second-degree assault. But it's well established in Oregon that the use of force or the force required for third-degree robbery is simply purse snatching, and the government hasn't challenged that. And this court, for example, in United States v. Bong, has held that mere purse snatching robberies where there's no violent physical force required don't satisfy the elements clause. And so the third-degree robbery, despite its statutory language, does not satisfy the elements clause. I think that's clear from Shelby, and I'm happy to, you know, if there's another case I need to cite. But I think that's uncontroversial, and the government hasn't argued otherwise. And the district court hung its hat on the use of the weapon element. But as I explained in my reply brief and in my opening brief, the use of a weapon is not the use of a weapon against the person of another. Of course, you can use a weapon without using violent physical force against another person just on its face. And so for that reason you can purse snatch while being armed. You can purse snatch while being armed. You can purse snatch, you know, after shooting a gun at property, which of course wouldn't satisfy this elements clause. The language of the statute just on its face does not require the gun to be used against another person, and so it doesn't satisfy the elements clause for that reason. I see I'm out of time. Thank you. Any questions? All right. Thank you, counsel.  Good morning, and may it please the court, my name is Paige Hammer, and I represent the United States. The government is asking this court to affirm the district court's finding that Mr. Wiggins was convicted of a crime of violence, and therefore is subject to sentencing as a career offender. Unless the court would like to start elsewhere, I'd like to respond to the question that Judge McHugh asked Ms. Shen about whether or not it factors whether we look to jury instructions or we look to the statute. And you look to the statute. It's very clear when we look through desk camps, Mathis, how this court has viewed the categorical and modified categorical approaches, is we're looking at elements. We're looking at the law itself. And perhaps jury instructions can be helpful when they accurately reflect what the statute with the law is. But here, the natural and probable consequences jury instruction is not accurate, certainly after 1971. The defense's reliance on the Court of Appeals' case law prior to Lopez Menjara's I think is also misplaced. In Gibson itself, the court said that the natural and probable consequences jury instruction was virtually meaningless, and there were serious questions about its validity. In Anloff in 2000, the court said the exact same thing, questioning whether or not it was even an accurate reflection of the law at any point in time. And in Anloff itself, the court cited Stark, Hightower, Holloway, and Moriarty, all cases that involved sufficiency of the evidence and whether or not there was enough evidence for the jury to find that a person had acted as an accomplice. And each time, in each of those cases, if we look in the language, each time the Court of Appeals' focus is on the intent of whether or not the person being accused of acting as an accomplice intended or facilitated the crime of the principle. And each time the answer was yes. And so ultimately, to conclude in that sense, the jury instructions can be helpful, but they are not the law. The law is the law. And when we're applying the categorical approaches, we must look there. It is. I mean, I understand your argument. And we have to start with the statute, and we have to determine whether it's divisible, and we have to apply the modified categorical approach. And we have now an Oregon Supreme Court decision that tells us that when this instruction was given, it was not an accurate statement of the law. But as your friend has pointed out, this is the jury instruction under which this man was convicted. So it does seem a little like a bait and switch that we're now going to say, oh, well, they couldn't have found you guilty of an intent that doesn't meet the requirement for a crime of violence because even though they were incorrectly instructed, even if they did. I mean, how do we deal with that here? Ultimately, Your Honor, the question isn't whether or not this natural and probable consequences jury instruction was given to in Mr. Wiggins' state court case, because that is a factual question. And the argument by defense is really claiming legal error in the state court conviction. And what matters is, what was the state of the law at the time of Mr. Wiggins' conviction? And here, since 1971, Oregon's accomplice liability statute has required specific intent of the accomplice to promote or facilitate the act of the principal. This court in Deder looked at something similar within the context of Section 2, which is similar to Oregon's accomplice liability statute. There, this court said that accomplice liability and principal liability are just theories of liability. They are not elements. They are not means. They are, therefore, not relevant to the first question when we're applying the categorical approach of whether or not the statute is divisible. And so if it's not an element or a mean, whether or not he was convicted as a principal and an accomplice is irrelevant. And that is something that this court said in McGuire itself and that Deder cites too. So the real question here is, was Mr. Wiggins convicted of a crime of violence by actually applying the categorical approach as it's meant, not digging into the weeds of what jury instructions were given, was there legal error at the state court level? That's not the question for this court. Is the statute divisible? As it relates to the second degree assault statute and to the first degree robbery statute, yes. The second degree assault statute is divisible because when we look at the language itself, there are varying mens rea and actus reus. This court has said that that can be an indicator that it is divisible. Therefore, by it being divisible, that gives us the opportunity to use the And so then the next question is, were the Shepard documents adequate for the district court to find that he was convicted of a crime of violence? And the answer is yes. The information, when we look at first the jury verdict form, it says count six, assault in the second degree physical injury. So then that begs the question, well, which subsection is it? And then we look to the indictment. And the language very clearly tracks subsection two. And there's no doubt that subsection two requires as an element. Thank you, Your Honor. Subsection B, there's no question that in order for Mr. Wiggins to have been convicted of that crime, it would require the use, attempted use or threatened use of force against another. It requires. Say again, Your Honor, I apologize. Knowing or intentional? Yes, Your Honor. On subsection B and A, C is where the depraved heart recklessness comes in. And so under Oregon law, does that knowing and intentional apply to the infliction of the injury or just the actus reus? And does it matter? I think that makes us go back to Borden, where the against part of the crime of violence language is a mens rea requirement. It's not an actus reus requirement. And so that's where. Well, it's a mens rea requirement, but the Supreme Court has made it pretty clear that you can have a mens rea requirement that has nothing to do with injury to the person. So I can intend to take the act, but I don't have any intention with respect to whether it injures anyone. I think I would point the court to. Sojin. I apologize, Your Honor. I missed that last statement. We have a case on that. For example, Sojin. I apologize, Your Honor. I am unfortunately not familiar with Sojin. Okay. Never mind. This wasn't raised, but it seems to me that if there's a problem with this statute in terms of whether it's a crime of violence, that's where the problem is. I think I would point, Your Honor, to Capwell. It's an Oregon case that says physical injury requires some form of external violence that produces harmful effect. I mean, I think implicitly that would mean there's some intent there. It can't just be an afterthought. Your Honor, I think I see I have some time left, though I won't necessarily use it all if I don't have to unless the court has questions. I would just briefly touch on the government's first argument in its brief regarding forfeiture of the specific argument related to the flawed jury instruction that's now being raised with this court. That argument was not raised to the district court. Certainly, trial counsel for Mr. Wiggins noted this divisibility issue. It somewhat in a perfunctory manner raises the idea of how Tristan may affect the district court of Oregon case. Tristan affects his client. But ultimately, whether or not this natural and probable jury consequences instruction is appropriately preserved for this court, our position is no. It was never raised. They argued Tristan, right? They argued Tristan. They did, Your Honor. In the district court. And the district court discussed Tristan with defense counsel in the sentencing hearing and with the government. And then the district court ruled and the written order discusses Tristan's reasoning. I mean, in our case, we'll have to preserve it, isn't it? As it relates to the divisibility argument, I would agree that there was sufficient record for it to be appropriately preserved for this court. As it relates to the natural and probable consequences jury instruction argument, my argument is no. If the claim that it was appropriately raised, my response is it was raised in a perfunctory manner. And therefore, the district court addressed it in a perfunctory manner, if at all. I don't believe that at any point in the record, when we look at the filings to the trial court outside of the Tristan case itself and the associated filings of the parties in that case, the sentencing transcript or the district court's order, I don't believe natural and probable consequences is ever discussed or mentioned. And the focus of Mr. Wiggins' trial court analysis was focusing on Tristan for this second degree assault, whether or not there was an appropriate mens rea, whether or not this recklessness mattered, raised the issue of divisibility between accomplice and principal liability, but the actual jury instruction, as far as I view the record, was not actually raised at all. Thank you. Unless this court has any further questions. I have a question on the robbery. I'm not ready to give up on that yet. The third degree robbery in Oregon has as an element that the person uses or threatens the immediate use of physical force, which, of course, that tracks 4B1.2. And whether it's a, if it's a purse snatching that can qualify, it doesn't say every purse snatching does, the offense, and it needs to be required, it's required to be proved that the defendant used or threatened the immediate use of physical force. It's not taking a purse off of a restaurant table when someone went to the restroom. And so, why not? Why does that not fit? Are you talking about specifically subsection A? I'm talking about, well, I'm talking about, I don't care about any of the first degree subsections. I'm talking about if you're going to be convicted of first degree, you have to have one of those, but you also have to be convicted of all the elements of third degree. It's incorporated, lesser included offense. And one of the elements of third degree robbery is that it's, you are convicted of. The jury is told you can't convict this person unless you find that person, beyond a reasonable doubt, used or threatened the immediate use of physical force. And so there may be some purse snatchings that don't, and so what do you get not guilty if you charge this? But some might. And those would be the ones you'd presumably get convicted of. Why is that not good enough? I think it goes to the, and unfortunately this is, I guess, isn't contrary to the government's argument, because we acknowledge that we, that third degree robbery isn't a crime of violence, because you can commit it in a way that doesn't use, attempt to use or threaten use of force. How can you say that when it says it's defined in this, the person uses or threatens the immediate use of physical force upon another person? It's an element. I think based off of the court's, and maybe I misunderstood the court's question, that I thought the court had said that there was a way that you could commit this without the use of force. The answer was that, well, that includes purse snatching, so that doesn't, that's not good enough. And my response to that is, maybe it would include, you could charge, you could try to charge of purse snatching, but unless there's physical force, you're not going to convict. I think that's, I don't necessarily have a disagreement, I guess, with the court's logic there. Our brief, I think, relied... But the government conceded this. Yes. The government conceded it's not a crime of violence. Based off of the Ninth Circuit case law, I believe we cited, that is, we did concede it. And so... Stork Lane? Pardon, Your Honor? Is it Stork Lane? I would have to look back at my brief, but that does sound familiar. Oh, okay. Now that's the U.S. case. Sorry. I apologize. Are there other questions for counsel? All right. Thank you, counsel, for your argument. Thank you, Your Honor. And I'll give you two minutes, rebuttal. Thank you, Your Honor. Sorry. Your Honor, just quickly to address the idea that the accomplice liability is never relevant to the categorical approach. The guidelines require this court to consider aiding and abetting liability, doing as Alvarez indicates, that overbroad accomplice liability can render an offense categorically overbroad. And in 2008, accomplice liability did render this offense overbroad as our position. As far as the idea that the codification of accomplice liability in 1971 changed the law, in 1974, the Oregon Court of Appeals in Fitzgerald interpreted this precise statute to permit liability for the natural and probable consequences of the defendant's conduct in a different offense or the cooperating witness's conduct, but they were interpreting the statute and made clear that they did not believe that it had changed the law substantively. And as far as the preservation issue, the whole reason that the district court did the divisibility analysis was because it understood Tristan's point, that if the offense was not divisible between accomplice and principal liability, that would render the offense overbroad. And I would point this court to volume 1, page 43, where the district court considers whether, under the categorical approach and due to accomplice liability under the statute, this offense is overbroad. So I think this issue was squarely presented to and decided by the district court, even if we're using slightly different language on appeal. And finally, just on this question about Oregon third-degree robbery, you know, of course, as we well know, sometimes the words in a statute are not interpreted by courts to mean what one might naturally think that they mean. And as the Ninth Circuit reasoned in Shelby, I just had this pulled up, but I turned my page. Oregon third-degree robbery does not require the victim to feel much of anything and can be committed by a perpetrator who prevents resistance by acting so swiftly that the victim does not have time to resist. I mean, that's at 939 Federal 3rd 975. And consistent with this Court's decision in Bong, that's not, that doesn't satisfy the elements clause or is why this robbery offense cannot render any error harmless. And so we'd ask for you to vacate the conviction and remand for resentencing. Thank you. Thank you, counsel, for your arguments. The case is submitted and counsel are excused.